IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Respondent, | | No. CR S-02-418 GEB GGH P |
| vs. | | |
| ANTELMO ONTIVEROS, | | ORDER AND |
| Movant. | | FINDINGS AND RECOMMENDATIONS |

I. Introduction

Movant is a federal prisoner proceeding pro se with a motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255. Movant challenges his 2004 conviction for conspiracy to possess methamphetamine with intent to distribute and with possessing methamphetamine with intent to distribute. 21 U.S.C. §§ 841(a)(1), 846. The motion raises three claims of ineffective assistance of counsel and one claim of ineffective assistance of appellate counsel. For the following reasons, movant's motion should be denied.

II. Factual Background

The court has independently reviewed the record and finds respondent's summary of the offense conduct to be accurate. Accordingly, it is adopted below.

/////

On September 3, 2002, a confidential informant for the Sacramento County Sheriff's Department finalized arrangements with movant for movant to sell six pounds of methamphetamine, for $4,000 per pound, to the informant's "partner," actually an undercover detective, Sal Robles. RT at 113, 114, 256. Movant was to make $500 per pound on the deal. RT at 257. Movant told the informant that the supplier would be coming from out of the area to deliver the methamphetamine. RT at 119, 257.

Detective Robles directed the informant, who was with movant at the time he informed Detective Robles of the arrangements that had been made, to go with movant to a specific location to meet him. RT at 116. Detective Robles then arranged for police surveillance of that location. RT at 116. As surveillance units watched, the informant and movant met with Mr. Lopez-Cuevas who was driving a purplish Honda. RT at 119, 127, 258. They met at 24th and Florin. RT at 257. Movant introduced Mr. Lopez-Cuevas as his cousin to the informant, and indicated that Mr. Lopez-Cuevas had brought the methamphetamine. RT at 267. Mr. Lopez-Cuevas asked movant if "everything" was ready, who then asked the confidential informant if "everything" was ready. RT at 260.[1] The confidential informant said he was ready. RT at 260.

Detective Robles then called the confidential informant and told him to tell movant and Mr. Lopez-Cuevas that they should drive to 21st and Florin to meet with him and consummate the transaction. RT at 128, 261.

Eventually, both cars were stopped. RT at 130, 131. As the police pulled over the informant and movant, movant said that they were "screwed." RT at 261. A search of the Honda revealed six pounds of methamphetamine. RT at 168, 172, 185, 187.

/////

/////

---

[1] Respondent states that Lopez-Cuevas asked movant if he (movant) was ready with the money, citing RT at 260. Actually, Lopez-Cuevas asked the confidential informant if he, the confidential informant, was ready with the money. RT at 260.

III. Discussion

    A. Legal Standard

A claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is applied to trial counsel. Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746, 765 (2000).

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

/////

/////

B. Claim 1

Movant argues that trial counsel was ineffective for failing to move for acquittal pursuant to Fed. R. Crim. P. 29 on grounds that there was insufficient evidence to support the conspiracy to possess methamphetamine with intent to distribute methamphetamine charges.[2] In particular, movant argues that the evidence demonstrated no more than a buyer/seller relationship between himself and his cousin. Movant was charged with conspiring with his cousin and other persons unknown to the grand jury. See Indictment filed September 19, 2002. Movant argues that appellate counsel was ineffective for failing to raise this issue on appeal.

Fed. R. Crim. P. 29 provides that after the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The standard applied when evaluating a Rule 29 motion is whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Herrera-Gonzalez, 263 F.3d 1092, 1095 (9th Cir.2001) (emphasis in original and citations and internal quotations omitted).

"The elements of a drug conspiracy under the statute at issue are (1) an agreement to accomplish an illegal objective; and (2) the intent to commit the underlying offense. Id. at 1095.

"That a defendant sold drugs to other individuals does not prove the existence of a conspiracy." U.S. v. Lennick, 18 F.3d 814, 819 (9th Cir. 1994). "Rather, conspiracy requires proof of 'an agreement to commit a crime other than the crime that consists of the sale itself.'" Id., quoting United States v. Lechuga, 994 F.2d 346, 347 (7th Cir. 1993). "Were the rule otherwise, every narcotics sale would constitute a conspiracy." Id. However, certain conduct

---

[2] Although couched as an ineffective assistance of counsel claim, movant is, in essence, raising an insufficiency of evidence claim. Such claims are more appropriately raised on appeal. Nevertheless, the court will address the ineffective assistance of counsel claim.

may be sufficient to indicate the existence of more than a buyer-seller relationship including arranging contacts and meetings and transactions in large quantities with regularity. U.S v. Montgomery, 150 F.3d 983, 1002 (9th Cir. 1998).  Indeed, the fact that movant knew the scope of what was planned in terms of the drug transaction and would benefit from it is all that is required to find him a part of the conspiracy.  Filling in the name of movant into the quote which follows proves this point:" There is also sufficient evidence to connect [Ontiveros] to the overall conspiracy.  The government need not show an explicit agreement between [Ontiveros] and the others. [citation omitted]  'It is sufficient to show that [Ontiveros] knew *or had reason to know* of the scope of the conspiracy and ... *had reason to believe* that [his] own benefits were dependent on the success of the entire venture." Id. (emphasis in original). United States v. Romero, 282 F.3d 683, 687 (9th Cir. 2002).

In this case, the evidence demonstrated that movant and his cousin had an agreement to sell methamphetamine to the undercover officer.  Movant negotiated the quantity and price of the drugs that were then supplied by his cousin.  Both movant and his cousin were to make money from the sale.  Based on this evidence, any rational trier of fact could have found a conspiracy between movant and his cousin to sell the drugs.  The evidence demonstrated that movant did not have a buyer/seller relationship with his cousin.  For these reasons, trial counsel did not act unreasonably by failing to make a  Rule 29 motion for acquittal of the conspiracy charges as such a motion would have been denied.  In addition, any argument by appellant counsel that there was insufficient evidence to support the conspiracy conviction on these grounds would have been denied.

Movant cites several cases in support of this claim which the court will address. In U.S v. Lennick, supra, the defendant argued that there was insufficient evidence to prove that he conspired to manufacture, distribute or possess with intent to distribute.  The Ninth Circuit found that there was insufficient evidence to support this conviction because the government proved only that the defendant possessed marijuana which he gave and sometimes sold to his

friends and acquaintances. 18 F.3d at 818. The Ninth Circuit held that mere sales to other individuals does not establish a conspiracy to distribute or possess with intent to distribute; rather, the government must show that the buyer and seller had an agreement to further distribute the drug in question. Id. at 819, n. 4.

Lennick is not relevant to this action because the facts are quite different. The defendant in Lennick sold drugs to his friends and acquaintances. In contrast, movant and his cousin agreed to sell drugs to the undercover officer. As stated above, movant negotiated the terms of the sale and his cousin provided the drugs. Both movant and his cousin were to make money from the sale.

Movant also cites U.S. v. Tyler, 758 F.2d 66 (2d Cir. 1985) in support of the instant claim. In Tyler, Police Detective Baxter purchased heroin from James Bennett. 758 F.2d at 67. Baxter testified that Tyler told him that he would get him some good dope. Id. at 68. After making an inquiry of an unidentified individual, Tyler encountered Bennett. Id. Tyler had a brief conversation with Bennett. Id. Bennett then approached Baxter. Id. Bennett and Baxter then walked away from Tyler and consummated their deal. Id. The two then separated, and Tyler walked up to Baxter and asked him for some change. Id.

The Second Circuit found that there was insufficient evidence of a conspiracy between Tyler and Bennett because the government had proven only that Tyler helped a willing buyer locate a willing seller. Id. at 69. "Conspicuously absent from this scenario is any evidence that Tyler asked Baxter how much heroin he sought to purchase, that Tyler indicated he had a specific source of heroin in mind for Baxter, that Tyler knew where to find Bennett or expected him to be in the area, or that Tyler had made any previous deals with Bennett." Id. at 68-69.

The facts of movant's case are different from those in Tyler. In movant's case, movant had an agreement with his cousin to sell drugs to the undercover officer. Movant negotiated the price and quantity of the methamphetamine that was to be sold to the undercover officer. RT at 256. Unlike the defendant in Tyler, movant knew where the supplier of the drugs,

6

i.e. his cousin, was to be found and arranged with him to be in the area. In other words, movant did not merely facilitate a sale with a random seller like the defendant in Tyler.

Movant also cites U.S. v. Melchor-Lopez, 627 F.2d 886 (9th Cir. 1980). In Melchor-Lopez, the Ninth Circuit found that there was not sufficient evidence of a conspiracy. In this case, Salvador Rina acted as an intermediary in bringing together appellant Melchor-Lopez, as supplier of heroin and cocaine, and appellant Kommatas, as purchaser. 627 F.2d at 888. In an effort to find a supplier of the drugs, Rina contacted Frank Noriega, a government informant and later, in order to secure a purchaser, he contacted Kommatas. Id. Although Rina dealt with both Melchor-Lopez and Kommatas, his scheme was not realized and Melchor-Lopez never met Kommatas. Id.

While the facts of the case are somewhat complicated, the undersigned finds that a discussion of the Ninth Circuit's findings is sufficient to demonstrate why Melchor-Lopez does not assist movant. The Ninth Circuit found that there was insufficient evidence of a conspiracy between either appellant and Rina. There was insufficient evidence of an agreement between Melchor-Lopez and Rina because Melchor-Lopez firmly insisted on certain conditions unacceptable to his would-be co-conspirators. 627 F.2d at 891. There was insufficient evidence of a "meeting of the minds" between Melchor-Lopez and Rina regarding the terms of the transaction. Id.

While Kommatas made a number of statements about heroin pricing and possible methods of carrying out a delivery, no agreement was ever reached. Id. "The law requires more than a conspiracy to attempt to arrange a purchase; it requires an agreement to carry out an illegal act." Id.

In contrast to the facts of Melchor-Lopez, in the instant case, it was reasonable to infer that movant and his cousin had reached an agreement regarding the sale of the drugs. Movant negotiated the price and quantity of the drugs supplied by his cousin. There was more than sufficient evidence of a meeting of the minds between movant and his cousin.

1       Finally, movant cites U.S. v. Gore, 154 F.3d 34 (2d Cir. 1998). In Gore, defendant Wells was charged with conspiring to distribute heroin. The evidence against him was a tape recorded conversation between himself and government informant Taft during which Wells sold Taft heroin with the label "Fuji Power." 154 F.3d at 39. During this conversation, Taft and Wells discussed the sale. Id.

      At trial, the government sought to show that because Wells sold heroin with the label "Fuji Power," he was part of a conspiracy to distribute heroin using this name. Id. No evidence, other than the one sale discussed on the tape, linked Wells with a conspiracy to distribute "Fuji Power" heroin. Id.

      The Second Circuit found that there was insufficient evidence to support Wells' conspiracy conviction. One statement on the tape mentioned his involvement with another person: "I don't want to lose face with the dude man because he always has something decent and he always comes up right. Never tapped, never in a bag, never messed up, yeah, so I should do him right." Id. at 40. The Second Circuit found that while this statement may have indicated a buyer-seller relationship with another person, standing alone it was not enough to show a conspiratorial agreement to distribute drugs between Wells and that unknown source. Id. The statement pointed only to the existence of a potential drug source. Id. "While the statement that Wells made may imply more than one transaction, it gives no specific indication of the exact nature of that transaction or the quantity of drugs involved. Therefore, it would be sheer speculation for jurors to conclude that an agreement to distribute drugs had been made." Id.

      By contrast to the facts of Gore, in movant's case, the evidence showed an agreement between movant and his cousin to sell a specific quantity of drugs for a specific price to the undercover officer. The cases cited by movant discussed above do not support his insufficient evidence claim. In fact, the factual differences between these cases, where no conspiracies were found, and the instant case, support the finding by the undersigned that sufficient evidence of a conspiracy between movant and his cousin existed.

For the reasons discussed above, claim one should be denied.

B.  <u>Claim 2</u>

Movant alleges that counsel was ineffective for failing to inform him of the option to plead guilty without the benefit of a plea agreement. Movant argues that had he plead guilty without a plea agreement he would have received a three level reduction in offense level for acceptance of responsibility.

Respondent argues that counsel was not ineffective for failing to communicate this option because movant was not willing to plead guilty. As evidence of movant's unwillingness to plead guilty, respondent cites his trial testimony. At trial, movant denied any involvement in the drug deal. Movant testified that he and the confidential informant did not discuss drugs. RT at 468. Movant denied knowing that there were drugs in his cousin's car. RT at 469. Movant claimed that he had known that the confidential informant was a confidential informant since June 2002. RT at 485. Movant denied brokering the sale of the drugs with the confidential informant. RT at 485.

At sentencing, movant told the court, "Well, my attorney has told me that they said that I had lied to the jury, and there are a lot of papers that say that what I said was the truth." Sentencing Transcript, p. 4. It appears that movant was claiming that while the jury found that he lied, there was plenty of evidence to show that what he testified to was the truth.

The Honorable Garland E. Burrell went on to find that movant had obstructed justice in the course of testifying and imposed a two-level enhancement pursuant to U.S.S.G. § 3C1.1:

> I will make the obstruction of justice finding. The government is correct in what it just stated. The defendant gave willfully false testimony during his trial. For instance, he said he had no knowledge of the drug transaction, and that he was just brokering the sale of the car which contained six pounds of methamphetamine. This willfully false testimony concerned matters that were material. And contrary to the argument of his lawyer, his testimony was the product of deceit rather than a result of confusion, mistake or faulty memory. Therefore, I adopt the findings in the presentence report and determine them to be true and correct.

Sentencing Transcript, p. 5.

The most compelling evidence of movant's unwillingness to admit guilt is the declaration of trial counsel attached to respondent's opposition. Trial counsel states,

> 1. From the outset, continuing on through the duration of my representation of him in district court, Mr. Ontiveros represented to me that he was not guilty. He denied to me brokering a deal for the sale of methamphetamine and he denied to me that he knew that the vehicle following his on the date in question contained methamphetamine. His representation to me was always that he was not guilty of the crimes charged and that he was not interested in any kind of a resolution. His denial of guilt was categorical; his explanation for the events leading to his arrest [was] consistent with his testimony.
>
> 2. Mr. Ontiveros also conveyed to me his unqualified belief that the case against him was not a strong one. Even though we discussed, at length, all of the evidence that would be introduced against him, and the effect of circumstantial evidence, he clung to the belief and stated to me his belief, that the only meaningful evidence against him was the undercover operative who was, he believed, tainted and whose testimony he believed would not [be] accepted by the jury.
>
> 3. It is my firm recollection that I discussed with Mr. Ontiveros the benefits and consequences of pleading guilty as opposed to going to trial. We discussed these things on a number of occasions, even up to just a few days before trial. We discussed as well the possibility of resolution of his case in a variety of permutations; the guidelines, the benefits of acceptance, the availability of a safety-valve and the value of cooperation. I explained to him that cooperation was a benefit to him, and that if he pled without cooperating his sentence would be considerably greater. Never once did he suggest to me that he would even consider entering a plea without cooperation. I also recall that cooperation was never an impediment to resolution. In other words, resolution of this case did not fail to come about because Mr. Ontiveros did not wish to cooperate with the government. Resolution failed to come about because Mr. Ontiveros refused to acknowledge any semblance of responsibility. He believed, and believed quite firmly, that the evidence against him was weak and that the government had no case against him.
>
> 4. Mr. Ontiveros adamantly refused to acknowledge guilt–of anything–and stated to me that he was not willing to enter a plea of guilty under any circumstances. His denial of guilt was in fact so pervasive that when it came time for his interview with probation I advised him not to discuss the case with the probation officer. I was concerned that his continued protestations of innocence, (which would have been a reiteration of his trial testimony) in light of the jury's verdict, might be thought of as a lie to the probation officer preparing the report.

Opposition, Exhibit 1.

While it is undisputed that trial counsel did not advise movant of the option to plead guilty without a plea agreement, his failure to do so was reasonable because it is clear that

10

movant was unwilling to admit his guilt.  Counsel believed, based on movant's representations to him, that movant was unwilling to enter a plea of guilty under any circumstances.

> In the pending § 2255 motion, movant appears to be prepared to admit some level of guilt:
>
>> While petitioner continue[s] to assert that he was not involved in any conspiracy–the offense with which he was charged–because he was only involved in buyer-seller relationship with the alleged co-conspirators, he does admit that he intended to introduce [his cousin] Lopez-Cuevas to the Informant. Thus petitioner's profession of "innocence" on a particular level or kind of offense, not a profession of innocence or any wrongdoing, and his admission at trial of criminal conduct does reasonably suggest that he would have pleaded guilty to obtain a lesser sentence, if properly advised.

Section 2255 motion, pp. 7a-7b.

Movant appears to be now willing to admit that he introduced the confidential informant to his cousin so that his cousin could sell the drugs.  Movant apparently does not admit that he negotiated the terms of the sale and was prepared to make money himself from the sale.  In other words, he still denies any involvement in a conspiracy.  However, movant does not deny that he told his counsel that he was unwilling to admit guilt and that he would not plead guilty under any circumstances.  While movant may now be willing to admit some involvement in the drug sale, he was not willing to do so when he was represented by counsel.

Even assuming that at the time he was represented by counsel movant had been willing to admit his limited involvement in the drug deal as described above, he would not have accepted the "open" plea agreement to plead to all charges because he would not have been willing to admit his involvement in a conspiracy.

On December 14, 2009, movant filed a motion for an evidentiary hearing as to this claim.  In this motion, movant alleges that had counsel advised him of the option of an "open" plea, he would have accepted responsibility for his participation in the offense.  Motion for Evidentiary Hearing, p. 4 of 8.  Apparently movant is now claiming that he would have plead guilty to the conspiracy charge.

In considering motions brought pursuant to § 2255, a district court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A district court has the discretion to forego an evidentiary hearing and instead rely on the record, which may be supplemented by: discovery and documentary evidence, the judge's own notes and recollection of the trial, and common sense. Shah v. United States, 878 F.2d 1156, 1159 (9th Cir.1989).

While movant now claims that he would have been willing to admit guilt had counsel advised him of the "open" plea option, he does not deny the statement in counsel's declaration that he discussed with movant the benefits and consequences of pleading guilty as opposed to going to trial as well as the possibility of resolving the case in a "variety of permutations." Movant does not address counsel's statement that movant refused to plead guilty under any of the other options discussed. Movant does not explain why he would have been willing to plead guilty to an "open" plea, but apparently under no other circumstances – circumstances which would in all probability have garnered a sentence much lesser than an "open plea" with acceptance of responsibility. Movant's failure to allege his willingness to plead guilty to all charges in his § 2255 motion makes this claim made in his motion for evidentiary hearing very suspect, indeed illogical. Under these circumstances, the undersigned finds movant's claim that he would have plead guilty to an "open" plea had counsel advised him of this option to be insincere and not credible. For these reasons, movant is not entitled to an evidentiary hearing and the instant claim is without merit. See U.S. v. Espinoza, 866 F.2d 1067, 1069 (1988) (quoting Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988) (no evidentiary is necessary when the issue of credibility can be "'conclusively decided on the basis of documentary testimony and evidence in the record.'")

Finally, the undersigned addresses U.S. v. Booth, 432 F.3d 542 (3rd Cir. 2005) cited by movant. In Booth, movant filed a § 2255 motion arguing that his trial counsel, aware of the substantial evidence against him and that he did not want to cooperate with the government,

12

rendered ineffective assistance by not informing him that he could have entered an "open" guilty plea, potentially entitling him to a three level reduction for acceptance of responsibility. 432 F.3d at 543.

In Booth, prior to trial, the government and movant's counsel entered plea negotiations. 432 F.3d at 544. The government's initial offer was for Booth to plead guilty to count one of the indictment. Id. In exchange, the government would dismiss count two, recommend that Booth be sentenced to the mandatory minimum of 60 months, and possibly bring a motion for downward departure pursuant to 18 U.S.C. § 3553(e) if it determined that Booth rendered substantial assistance in the investigation of a possible co-defendant. Id.

Booth rejected this offer and made a counter-offer to plead guilty to count two of the indictment in exchange for dismissal of count one. Id. The government told Booth's counsel that it would consider the plea to the lesser charge only if Booth would give a proffer concerning his own culpability and the criminal involvement of any other participants involved in the crime. Id. Booth balked at the proposal because he did not want to cooperate against anyone else involved in the crime. Id. Because the parties could not agree, the case went to trial where Booth was found guilty. Id.

The Second Circuit found that Booth was prejudiced by counsel's failure to advise him of the possibility of an "open" plea because he likely would have received a lower sentence had he entered such a plea. Id. at 548-549. The Second Circuit went on to find that counsel should have advised Booth of the "open" plea option. The Second Circuit found that because the evidence against Booth was strong and because he was reluctant to cooperate with the government, the "open" plea option was reasonably available. Id. at 549. The Second Circuit remanded the case for an evidentiary hearing. Id.

The instant case differs from Booth in that here, movant was unwilling to enter any plea agreement with the government because he was unwilling to admit any guilt. In Booth, the movant indicated a willingness to negotiate a plea agreement so long as he was not required

to cooperate against anyone else involved in the crime.  Because movant in the instant case did not want to plead guilty under any circumstances, the "open" plea was not an option, as it was in <u>Booth</u>.

    C.  <u>Claim 3</u>

Movant argues that counsel was ineffective for failing to object to the application of the obstruction of justice guideline.  In the opposition, respondent observes that counsel did object to application of this guideline.  In objections to the presentence report filed April 28, 2004 (court file no. 90), counsel objected to application of this guideline.  Counsel argued, "Although the jury did not believe Mr. Ontiveros, it is submitted that his trial testimony does not establish a willful impediment to or obstruction of justice and the recommended two-level increase is inappropriate."  Court file no. 90, p. 2.

Because counsel objected to application of the obstruction of justice guideline, the instant ineffective assistance of counsel claim is without merit.

Accordingly, IT IS HEREBY ORDERED that movant's motion for an evidentiary hearing (no. 185) is denied;

IT IS HEREBY RECOMMENDED that:

1. Movant's March 16, 2009, motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (no. 163) be denied; and

2. The clerk of the court be directed to close the companion civil case No. CIV S-09-739 GEB GGH.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are

1  advised that failure to file objections within the specified time waives the right to appeal the
2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: 02/02/2010

4                                                   /s/ Gregory G. Hollows
5                                                   _____
                                                    UNITED STATES MAGISTRATE JUDGE
6  on418.257